IN THE UNITED STATES DISTRICT COURT
                        FOR THE NORTHERN DISTRICT OF TEXAS
                                  DALLAS DIVISION

| | |
|---|---|
| RUSSEL R. WHITEHEAD, #01909111,  §<br>       Petitioner,   §<br>  §<br>v.  §<br>  §<br>LORIE DAVIS, Director,  §<br>Texas Department of Criminal Justice,  §<br>Correctional Institutions Div.,  §<br>       Respondent.  § | CIVIL NO. 3:16-CV-1580-N-BK |

               FINDINGS, CONCLUSIONS AND RECOMMENDATION
                   OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, the *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 was referred to the United States magistrate judge. Upon review of the relevant pleadings and applicable law, and for the reasons that follow, the petition should be **DENIED**.

## I. BACKGROUND

In 2014, Petitioner was convicted of aggravated assault-family violence and, following entry of affirmative findings on deadly weapon and family violence, he was sentenced to 25 years' imprisonment. *State v. Whitehead*, No. 31618CC (County Court at Law, Kaufman Cty., Tex., Jan. 29, 2014), *aff'd*, No. 05-14-00230-CR, 2014 WL 7498052 (Tex. App.–Dallas, Dec. 31, 2014, pet. ref'd); Doc. 25-10 at 26 (*Judgment of Conviction*). The Texas Court of Criminal Appeals subsequently denied state habeas relief. *Ex parte Whitehead*, No. WR-84,518-01 (Tex. Crim. App. Oct. 28, 2015) (denied without written); Doc. 25-11.

In his timely federal petition, initially filed June 14, 2016, Petitioner challenges (1) the sufficiency of the evidence, and claims that (2) he was denied effective assistance of counsel, (3) the State and trial court committed errors, and (4) the "State contrived to convict through

deceptive practices." Doc. 12 at 6-8 (*Amended Petition*). Respondent argues the first claim is procedurally barred and the remaining claims lack merit. Doc. 23 at 11-27. Petitioner has filed a reply. Doc. 26.

The following is the summary of the trial evidence recounted verbatim from the unpublished opinion of the state appellate court in the direct appeal of this case:

> The charges against [Petitioner] arose from an assault on his wife Debra in 2012 in which she suffered head injuries. [Petitioner] hit his wife so hard that she lost consciousness. She had two black eyes, a knot on her head, bruises on her throat, and other bruises on her body. She stayed home from work for several days, and then returned to work but tried to avoid seeing any co-workers. Approximately a week after the attack, Debra's head was hurting so badly that she went to her boss, Ellie Huff, who was a registered nurse, to ask for help, although she did not tell Huff the cause of her injuries. Huff assisted Debra in getting a CT scan and going to the emergency room of the hospital where they worked. Debra was later admitted to the hospital and underwent surgery to remove subdural hematomas (blood clots) on her brain. Her neurosurgeon testified that her injuries were life-threatening; that she would have died without the surgery; and that there were permanent effects from the injuries such as difficulty concentrating. [Petitioner] was subsequently arrested and charged with assault.
>
> All of the issues in this appeal arise from the punishment phase of the trial. In the punishment phase, Debra testified that [Petitioner] assaulted her for the first time in 1998, hitting her so hard in the back of the head that he broke the barrette she was wearing. He then hit her in the face, causing a gash in her nose. In 2001, [Petitioner] grabbed her arm and threw her down, causing a spiral fracture in her arm. In 2002, an attack by [Petitioner] caused bruising on Debra's face and arm. Debra testified that she was in a relationship and living with [Petitioner] at the time of these assaults, and married [Petitioner] in 2002 because she loved him and hoped he would change. After the marriage, other assaults occurred. Debra testified that "[w]e would get into a fight, he would choke me, he would kick me out. And, he would beg me to come home and I would come home. He would be good for a while and then it would happen again."
>
> Debra's son testified that he observed the gash in his mother's nose after the 1998 incident. Debra's daughter testified to an incident in 2006 in which [Petitioner] called her and "told me I needed to come get my mother before he killed her." She also testified that she came to the hospital after the 2012 assault and observed her mother's injuries.

*Whitehead*, 2014 WL 7498052 at *1.

## II. ANALYSIS

### A. "No Evidence" Claim is Procedurally-Barred – Claim 1

Because Petitioner did not challenge the legal sufficiency of the evidence on direct appeal, and raised it only in his state habeas application, his failure constitutes a procedural default that bars review of his claim on the merits. *See Reed v. Thaler*, 428 Fed. App'x 453, 454 (5th Cir. 2011) (when a petitioner raises a sufficiency claim only in his state habeas application, "the Texas Court of Criminal Appeals' denial of his application [is] based on an independent and adequate Texas procedural ground such that his sufficiency claim is procedurally defaulted."); *Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004) (sufficiency claim is not cognizable in state habeas application). Moreover, Petitioner has not demonstrated cause for the default and actual prejudice, or that a fundamental miscarriage of justice would occur if the Court were to refuse to consider his claim. *See Coleman v. Thompson,* 501 U.S. 722, 750 (1991). Contrary to the assertion in his reply, there is no evidence that Petitioner raised "insufficiency" of the evidence in his petition for discretionary review and, even if he had, it would not change his failure to raise the claim on direct appeal, which is the basis for the procedural bar here. Finally, his reply-argument that the "state had ample opportunity to review" the no evidence claim in his state habeas application is inapposite because again, such a ground was not cognizable on state habeas review. Doc. 26 at 5; *see Ex parte Grigsby*, 137 S.W.3d at 674.

Accordingly, Petitioner's sufficiency of the evidence claim is procedurally barred from federal habeas review.

### B. Remaining Claims Lack Merit

Petitioner is not entitled to habeas corpus relief unless the state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Petitioner bears the burden of establishing that he is entitled to relief. *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002). However, that burden is "difficult to meet," *Harrington v. Richter*, 562 U.S. 86, 102, 105 (2011), because the decision of the state court is reviewed under a "highly deferential" standard and afforded the "benefit of the doubt." *Woodford*, 537 U.S. at 24 (citation and internal quotation marks omitted). Section 2254(d) "was meant to stop just short of imposing a complete bar to federal court relitigation of claims already rejected in state court proceedings, allowing for federal habeas relief only where there have been 'extreme malfunctions in the state criminal justice systems.'" *Wilson v. Cain*, 641 F.3d 96, 100 (5th Cir. 2011) (*quoting Richter*, 562 U.S. at 102)). Consequently, as long as "'fairminded jurists could disagree' on the correctness of the state court's decision, federal habeas relief should not be granted." *Richter*, 562 U.S. at 102 (*quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "even if the federal court disagrees with the state court ruling, the federal court should not grant habeas relief unless the state court ruling was objectively unreasonable." *Wilson*, 641 F.3d at 100; *Richter*, 562 U.S. at 101 ("an *unreasonable* application of federal law is different from an *incorrect* application of federal law.") (quotations and quoted case omitted; emphasis in

original). The deferential standard of review applies even where the state court, as in this case, summarily denied all claims without written order. *See Richter*, 562 U.S. at 100 ("§2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

Moreover, the Court reviews claims of ineffective assistance of counsel under a "doubly deferential" standard, taking "a 'highly deferential' look at counsel's performance," under *Strickland v. Washington*, 466 U.S. 668, 689 (1984), "through the 'deferential lens of § 2254(d).'" *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (quoted cases omitted). In light of the deference accorded by section 2254(d)(1), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. 86, 101.

To establish ineffective assistance of counsel at trial, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. 668, 687. The Court need not address both components if the petitioner makes an insufficient showing on one. *Id.* at 697. To establish deficient performance, a petitioner must show that his attorney's actions "fell below an objective standard of reasonableness." *Id.* at 689. In evaluating an attorney's performance, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," or that under the circumstances the challenged action might be considered sound trial strategy. *Id.* at 689. Under *Strickland*'s prejudice prong, a petitioner additionally must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

## 1. Ineffective Assistance of Counsel at Trial – Claim 3

Petitioner does not present any factual support for his claim that counsel was ineffective for failing to conduct a more detailed pre-trial investigation in order to "formulate a viable defense strategy to assist his client." Doc. 12 at 28. Allegations of a counsel's failure to investigate must state with specificity what the investigation "would have revealed and how it would have altered the outcome of the trial." *See Lockett v. Anderson*, 230 F.3d 695, 713 (5th Cir. 2000). Here, Petitioner offers only minimal facts regarding how counsel's investigation was deficient. *See Strickland*, 466 U.S. 668, 689 (to establish deficient performance, a petitioner must show that his attorney's actions "fell below an objective standard of reasonableness."). He asserts counsel should have investigated further his wife's "mental and emotional impairments," the treatment that she had received, and the underlying source of dissension between the complainant and the Petitioner. Doc. 12 at 7, 29-30. In any event, he has not shown how further investigation would have helped his defense and, ultimately affected the outcome of his trial.

Petitioner also claims that counsel failed to interview "all witnesses" and locate an expert witness to develop "a viable defense" at trial. Doc. 12 at 7, 27-28. Petitioner does not explain what difference any additional witness would have made. Specifically, he fails to identify any such potential witnesses, or present any evidence that they were available and willing to testify and that their testimony would have been favorable. *See Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) ("[T]o demonstrate the requisite *Strickland* prejudice, [a habeas petitioner] must show not only that [the] testimony would have been favorable, but also that the witness[es] would have testified at trial.") (quoting *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)). Contrary to Petitioner's reply-argument, the memorandum in support of his habeas

petition does not specifically state what counsel could have discovered through a more detailed investigation. Doc. 26 at 7. Notably, in his reply, Petitioner only points to his wife's and his own medical records and argues generally the "failure to discover." Doc. 26 at 7.

Likewise, Petitioner has presented no evidence that an expert would have testified at trial and that the testimony would have been favorable to him. Generally, without more, defense counsel's decision not to hire or call an expert witness is entitled to deference as reasonable trial strategy. *See Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993) (counsel's decision not to hire an expert fell "within realm of trial strategy"). Petitioner's reliance in his reply on the holding in *Tiede v. State*, 104 S.W.3d 552 (Tex. App. -Tyler 2000, pet. ref'd), is misplaced. Doc. 26 at 6-7. *Tiede* did not address a claim of ineffective assistance of counsel for failure to locate and call an expert witness, but the exclusion of a defense psychiatric expert's testimony during the punishment phase of a murder trial. 104 S.W. 3rd at 563-65.

Because Petitioner has not demonstrated that the state court's implicit decision rejecting his ineffective-assistance-of-counsel claim was contrary to or an unreasonable application of clearly established federal law, his third claim fails.

### 2. Ineffective Assistance of Counsel on Appeal – Claim 5

Petitioner's claims of ineffective assistance of counsel on appeal fare no better. Petitioner asserts his appellate counsel rendered ineffective assistance by failing to "master the record to allow for an adequate and proper investigation into the facts of the case," and "to complete sequences in the several volumes contained in the Reporter's Record." Doc. 12 at 8; Doc. 12 at 33. He claims the trial record could not or was not "mastered" and, thus, appellate counsel could not fully investigate the errors. *Id.* Petitioner also complains that appellate

counsel filed two "frivolous grounds," instead of raising "errors that were apparent and readily revealed in the record." *Id*.

On direct appeal, counsel raised three sentencing-phase related grounds, arguing that: (1) Exhibit 9, which contained medical records from two prior incidents of domestic violence, was inadmissible because it denied Petitioner the constitutional right to confront the witnesses testifying against him, (2) the computer records of Petitioner's prior criminal history were not properly before the Court when the State failed to show that he was the person convicted of the prior offenses, and (3) the trial court erred by failing to orally pronounce the sentence of restitution. *Whitehead v. State*, 2014 WL 7498052, at *2. Although the state court of appeals overruled the first two grounds, it sustained the third one and modified the judgment to delete the order of $51,208.00 in restitution. *Id.* at *5.

Applying the appropriate deference and having independently reviewed Petitioner's claim and the state court record, the Court concludes the state court's implicit application of *Strickland* was reasonable. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000) (applying *Strickland* standard in evaluating the ineffective assistance of appellate counsel). Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Id.* (citing *Jones*, 463 U.S. at 751-752). It is counsel's professional duty to choose among potential issues, according to his judgment as to their merit and his tactical approach to maximize the likelihood of success on appeal. *Jones*, 463 U.S. at 752; *Schaetzle v. Cockrell*, 343 F.3d 440, 445 (5th Cir. 2003) (counsel is obligated only to raise and brief those issues that are believed to have the best chance of success).

Petitioner has not demonstrated that any of the issues that he contends appellate counsel should have raised were clearly stronger than the issues counsel did pursue on direct appeal. *See Smith*, 528 U.S. at 288 ("[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome") (cited case omitted). Petitioner only briefly mentions "nonfrivolous grounds such as the unconstitutional use of laws to charge/convict or the lack of critical diagnostic imaging (evidence in support) or even establishing deficiency by trial counsel." Doc. 12 at 8. In his brief in support, Petitioner references other possible appeal issues: (1) "the discrepancy . . . in the jury charge"; (2) "the false evidence of photos taken from some other event involving the [complainant]," and (3) the "unconstitutional manner that lawful State Penal Codes were used" to "arrest and charge" and "facilitate a stronger base for conviction." Doc. 12 at 35. However, Petitioner offers no further explanation, supporting argument, or legal authority for any of his posited claims. Moreover, a claim challenging the ineffective assistance of trial counsel is generally better suited for resolution in habeas corpus proceedings rather than on direct appeal anyway.

Because Petitioner has not demonstrated that the state court's decision implicitly rejecting his claim of ineffective assistance of appellate counsel was in any way unreasonable or involved the contrary application of federal law, he cannot prevail.

### 3. Trial Court's Evidentiary Errors -- Claims 2, 4(a) and 6

Next, Petitioner contests the admission of physical and testimonial evidence, raising multiple issues throughout grounds 2, 4(a) and 6, including

- the qualification of and testimony of Huff, a nurse with 21 years of experience, as an expert witness, Doc. 12 at 32, 36;

- the credibility of the State's witnesses and the voluntariness of their testimony, Doc. 12 at 31-32 (complainant's son and daughter), Doc. 12 at 35-36;

- the admission of extraneous or bad acts during the punishment phase of trial, Doc. 12 at 25, 36.

- the admission of a recorded argument between Petitioner and the complainant three months before the assault in question, Doc. 12 at 36; and

- the authenticity of photographs admitted by the State, Doc. 12 at 37.

Petitioner cannot establish that the trial court's decision to admit the evidence and testimony amounted to a federal constitutional violation, or rendered his trial fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (It is not "the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007) (even if admission of evidence amounts to constitutional error, habeas claim still fails if petitioner cannot show that the evidence had substantial and injurious effect or influence in determining jury's verdict).

Here, apart from self-serving and conclusory assertions, Petitioner offers nothing to establish that any alleged error of the trial court rendered his trial, as a whole, unfair. He contends that Ms. Huff, the nurse with 21 years of experience, who personally witnessed his wife's injuries, offered testimony "that her state license would disallow" because she answered "hypothetical questions" or spoke "out of turn about issues no question was ventured to provoke any response . . . ." Doc. 12 at 32. Yet, there is no error shown here where Huff's extensive qualifications and wide-ranging medical experience qualified her as an expert and, as such, she

was permitted to offer an opinion about and diagnosis of the complainant's injuries. Doc. 24-8 at 22-51 (RR Vol. 4).

Similarly, Petitioner's assertions – (1) that there is no "forthcoming evidence or proof" to substantiate or corroborate either the type or the cause of the injuries that his wife endured or the "claims made by [his wife] of being hit" or (2) that Huff, Petitioner's stepchildren and other witnesses were coerced into testifying – fail to meet the high standard of showing that his trial was fundamentally unfair. Doc. 12 at 25-26, 31-33, 35-36. Moreover, insofar as Petitioner asks this Court to re-evaluate the evidence presented at trial or the credibility of the witnesses, federal habeas courts are prohibited from doing so. It was a function of the jury to resolve any conflicts in the evidence, evaluate the credibility of the witnesses and the weight of the evidence, and to accept or reject any or all of the evidence presented at trial. *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008) (the jury is the sole judge of the fact and weight given to trial testimony) (citing Tex. Crim. Proc. Code art. 36.13 and 38.04); *see also Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."). Furthermore, as previously concluded, Petitioner's sufficiency-of-the-evidence claim is procedurally barred and will not be entertained as a disguised challenge to the trial court's evidentiary rulings.

Next, Petitioner challenges the admission of his alleged prior bad acts from 2001 and 2002. Doc. 12 at 25; Doc. 23 at 24. He maintains "the prosecution prejudiced the jury by introducing unfounded, proven [sic] or recorded [sic] claims of prior assaults, two of which were recorded as accidents on the farm, but now, at trial were being attributed as assaults." Doc. 12 at

25.  However, the prior bad acts about which Petitioner complains were not offered during the guilt-innocence phase of the trial, but were properly introduced during punishment phase before the court, after the jury's discharge.  Doc. 24-9 at 13-22, RR Vol. 6.  *See Haley v. State*, 173 S.W.3d 510, 514-15 (Tex. Crim. App. 2005) (discussing the application of Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a) and the admissibility of unadjudicated extraneous offenses and prior bad acts at punishment).

Petitioner also claims that appellate counsel was ineffective for failing to advance arguments related to the fact that some of the photographs introduced at trial were "developed at Eckerd's, a drugstore that hadn't been in business for a number of years."  Doc. 12 at 35.  But the Eckerd's photos (Exhibit 1) related to the 2002 prior bad act and, again, the photos were introduced only during the punishment phase of the trial.  Doc. 24-9 at 18-20 (RR Vol. 6); Doc. 24-10 at 8-18.  Thus, counsel was not ineffective for failing to advance a meritless argument, and, as discussed above, Petitioner has failed to show that any such issue was stronger than those appellate counsel did advance.

Similarly, Petitioner's reply-argument that his wife's son and daughter testified to other prior incidents – a gash on his wife's nose in 1998 and Petitioner's 2006 threat to kill his wife unless the daughter came to pick-up her mother – fare no better.  Doc. 26 at 3.  Once more Debra's son and daughter, Jason Kennedy and Melissa McCasco, testified *only* during the punishment phase of the trial when evidence of such prior bad acts was admissible.[1]  Doc. 24-9 at 35-38 (Kennedy) and 39-42 (McCasco).

---

[1] Volumes 1-4 contain the transcript of the guilt innocence phase of the trial, *see* Doc. 24-5; Doc. 24-6; Doc. 24-7; Doc. 24-8, while "Volume 6 of 7," dated January 29, 2014, is the transcript of

Again, Petitioner has failed to show that his trial was fundamentally unfair. Thus, the state court's decision implicitly denying the claims raised in grounds 2, 4(a), and 6 was not contrary to or an unreasonable application of clearly established federal law, and so these claims also fail.

### 4. Prosecutorial Misconduct & *Brady* Violation – Claim 2

In his second ground, Petitioner also complains of prosecutorial misconduct, claiming the State used "false . . . [and] perjured evidence, withheld "evidence beneficial to the defense," and "fabricated evidence in trial before the jury." Doc. 12 at 6, and 24.[2] He asserts that the prosecution failed to "reveal [at trial] that [his wife] had been diagnosed, and treated for mental and emotional impairments and treated with medications for those impairments." Doc. 12 at 25. Petitioner also claims the "prosecution prejudiced the jury by introducing unfounded, proven or recorded claims of prior assaults." *Id*. Finally, he maintains the prosecutor "fabricated evidence during trial, in view of the jury, using [his wife] to demonstrate what the state proposed occurred," and showing as part of the re-enactment "how the Petitioner choked and then with a flurry of fists, injured or caused the injury to [his wife]." Doc. 12 at 26; *see* Doc. 24-7 at 60-65 (RR Vol. 3).

Petitioner's allegations of prosecutorial misconduct are conclusory and lack merit. Petitioner fails to offer any factual or legal support for any of his claims. *Ross v. Estelle*, 694

---

the punishment phase of the trial. *See* Doc. 24-9. There is no Volume 5 in the state court record, and any reference to Volume 5 in the Index of Volume 1 and in docket entry 24 appears to be a clerical error. *See* Doc. 24-5 at 3.
[2] Respondent did not address Petitioner's *Brady* and prosecutorial misconduct allegations, although it appears the claims were properly exhausted. Doc. 23 at 22-26; Doc. 25-10 at 124-126.

F.2d 1008, 1011 (5th Cir. 1983) (cited cases omitted) (without evidence in the record, "a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . , unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value."). In any event, Petitioner's bare assertions do not establish that material, false or misleading testimony was admitted at trial. *See Knox v. Johnson*, 224 F.3d 470, 477 (5th Cir. 2000) (quoting *Giglio v. United States*, 405 U.S. 150, 153 (1972) (to prove a Due Process Clause violation based on the State's reliance on false testimony, the defendant must establish: "(1) that a witness for the State testified falsely; (2) that such testimony was material; and (3) that the prosecution knew that the testimony was false."); *see also Napue v. Illinois*, 360 U.S. 264, 269, 271 (1959).

Moreover, insofar as Petitioner seeks to raise a *Brady* violation [Doc. 12 at 24-25], he has not alleged, much less established, that the State suppressed evidence that was favorable and material to his defense. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) (to establish a *Brady* violation, a petitioner must prove (1) the prosecutor suppressed or withheld evidence (2) that was favorable and (3) material to his guilt or punishment). Petitioner concedes that his counsel had his wife's medical records, Doc. 12 at 29, and fails to show how the mere fact of his wife's mental and emotional impairments and treatments would have been favorable and material to his guilt or innocence. He merely repeats that his wife "had been diagnosed and treated for mental and emotional impairments," and that she displayed "violent and erratic behavior." Doc. 12 at 25. Petitioner's averments alone, especially in light of the fact that his wife's condition was obviously known to the defense, are insufficient to establish a violation of *Brady*.

Because the state court's decision impliedly rejecting these claims neither was contrary to, nor involved an unreasonable application of, clearly established federal law, this claim fails.

### 5. Trial Court Error Due to Defective Jury Instructions – Claim 4(b)

Lastly, Petitioner challenges the jury instructions. Doc. 12 at 7. He claims the trial court "committed error when it gave instructions to the jury before deliberations for the finding for the **use** of a deadly weapon, when the element of the charge was for the **exhibition** of a deadly weapon, neither of which were supported by evidence, nor by the law used to facilitate the charge." Doc. 12 at 33 (emphasis in original).

However, the *Second Amended Indictment* specifically charged Petitioner with aggravated assault-family violence under Texas Penal Code § 22.02(b)(1) and alleged that "the defendant did then there **use or exhibit** a deadly weapon[.]" Doc. 25-10 at 12 (emphasis added). Thus, Petitioner cannot show "prejudice of a constitutional magnitude." *Galvan v. Cockrell*, 293 F.3d 760, 764-65 (5th Cir. 2002) ("Improper jury instructions . . . do not generally form the basis for federal habeas relief." The proper inquiry is whether "there was prejudice of constitutional magnitude."). In his reply, Petitioner maintains "the term 'use or exhibit was used after the verdict was returned and was never an element of the indictment." Doc. 26 at 11. Again he is incorrect. The record clearly shows that the *Second Amended Indictment* was filed in October 2013, several months before the January 28, 2014 verdict finding Petitioner guilty of Count One. Doc. 25-10 at 40-41.

Accordingly, Petitioner has not demonstrated that the state court's decision implicitly rejecting this claim was contrary to or an unreasonable application of clearly established federal law. Therefore, he cannot prevail.

### 6. Evidentiary Hearing Not Required

In his reply, Petitioner requests an evidentiary hearing to "resolve the legal and factual question in his case." Doc. 26 at 11. However, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *see also Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011) (same rule applies to factual determinations under section 2254(d)(2)). Here, as in *Pinholster*, the petition concerns only claims under section 2254(d)(1) that were adjudicated on the merits in state court. Petitioner cannot overcome the limitation of section 2254(d)(1) on the record that was before the state court. Accordingly, he is not entitled to an evidentiary hearing.

### III. RECOMMENDATION

For the foregoing reasons, it is recommended that the petition for writ of habeas corpus be **DENIED**.

**SIGNED** November 3, 2017.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); F<small>ED</small>. R. C<small>IV</small>. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute,* 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE